Ruma, J.
This is an action in contract to recover the balance due on a promissory note executed by the defendants. Count II of the complaint is for money lent and is a claim for the same indebtedness represented by the promissory note.
The reported evidence indicates that the defendants owned and operated a restaurant on premises in Lancaster, Massachusetts which they rented from the plaintiffs. The defendants had also purchased the restaurant business from the plaintiffs who had taken back the defendants’ promissory note in the sum of $25,000.00 in payment thereof. Said promissory note stated, in pertinent part:
In the event that the ownership of the personal property mortgaged as security for this Note, or any part thereof, becomes vested in anyone other than the mortgagors named in the mortgage given as collateral for this Note, the whole sum of principal and interest shall become immediately due without notice at the option of the holder hereof.
Paragraph 10 of a related “Security Agreement and Financing Statement” also provided for full and immediate acceleration of the debt “if default be made in the payment of any note, installment or interest, or any of the terms of this agreement....”
The parties’ lease obligated the defendant-tenants to maintain the premises in good condition “reasonable wear and tear, damage by fire and other casualty only excepted.” In September, 1984, the leased premises were destroyed by fire and the defendants’ restaurant was closed. The defendants thereafter ceased making payments on the note and alleged that the fire was caused by plaintiffs negligence in obvious breach of the parties’ lease. The sum of $22,200.00 remains due on the note.
In its simplest terms, the reported evidence suggests that the fire resulted *102 from the use of an improper and inadequate electrical extension cord which was connected to the restaurant’s milk cooler. Conflicting evidence was adduced at trial as to the date of the installation of the cord and the identity of the persosns responsible for making the dangerous electrical connections. Both parties denied knowledge and utilization of the extension cord. The trial justice found, inter alia, that:
The extension cord must have been installed after the plaintiff sold the business and when the plaintiff was no longer in control of the premises. The condition which caused the fire was not the result of any act or failure to act on the part of the plaintiff.
The defendants had counterclaimed for the plaintiffs’ negligent failure to maintain the premises free from fire and had sought breach of lease damages covering their personal property and business losses. Judgment was entered for the plaintiffs on the defendants’ counterclaim.
The trial court also found for the plaintiffs on the principal complaint and judgment was entered in their favor in the sum of $22,200.00.
At the commencement of suit, the plaintiffs secured an ex parte attachment on trustee process of an insurance company settlement draft in the amount of $20,000.00. The named trustees were Great American Surplus Lines Insurance Company (“Great American”), Quaker Insurance Agency (“Quaker”), and D. Francis Murphy Insurance Agency Inc. (“Murphy”). The trial justice denied the defendants’ motion to dissolve such attachment and excluded at trial all evidence material to the question of the validity of the attachment. The grounds for the defendants’ dissolution motion were restated as requests for rulings and submitted to the trial justice at the close of the evidence.
1. Contrary to the requirements of Dist./Mun. Cts. R. Civ. P., Rule 64(c)(2), the report before us fails to “set forth in clear and concise terms the rulings upon which the [defendants] now ask for a review. . .and how [the defendants] claim to be prejudiced by such rulings.” Given this ommission of any delineation of appellate issues, review is hereby restricted to those issues which we deem to have been expressly and adequately briefed by the defendants. Dist./Mun. Cts. R. Civ. P., Rule 64(f).
2. The defendants’ primary focus on this appeal is the trial court’s refusal to dissolve the Dist./Mun. Cts. R. Civ. P., Rule 4.2 attachment on trustee process secured by the plaintiffs. Not all of the eleven arguments advanced by the defendants are valid or merit discussion. The following grounds are sufficient, however, to require a dissolution of the attachment.
The property allegedly held by the named trustees herein is a check made payable to the defendants in settlement of their fire insurance claim. Great American, the maker of such draft, is patently exempt from trustee process as this check is a negotiable instrument within the purview of G.L. c. 246, § 32. Section 32 expressly exempts from trustee process any person who has “drawn, accepted, made, or endorsed a negotiable bill, draft, not or other security which at the date of the summons was negotiable to a holder in due course.”
Second, the defendants’ rights against the named trustees, as represented by such check or settlement draft, constitute a choice in action which may not be trusteed pursuant to G.L. c. 246 and Rule 4.2 Jordan v. Lavin, 319 Mass. 362 364 (1946); Lupton v. Cutler, 25 Mass. (8 Pick.) 298, 303 (1929).
Great American is a foreign corporation with no customary place of *103 business in Massachusets. Section 1 of G.L. c. 246 specifically states that”.. .a foreign corporation.. .shall not beso summoned unless.. .it has a usual place of business in the Commonwealth.” Moreover, Great American was merely designated as a trustee, but never actually served as required by Rule 4.2(c) and G.L. c. 246, § 5. Conversely, named trustee Murphy was actually served, but answered that, at the time of service, it was not in possession of goods, effects or credits of the defendants. Section 13 of G.L. c. 246 mandates the discharge of any trustee who truthfully answers “no funds.” Northeastern Malden Barrel Co. v. Binder, 341 Mass. 710 (1961). The answer of the third named trustee, Quaker, disclosed on its face that Quaker did not have the settlement draft in its possession on the precise date of service. The sine qua non of trustee process is the trustee’s actual possession of defendant’s goods or credits at the time of the service of the trustee summons. On these facts, discharge of Quaker and a dissolution of the attachment were required pursuant to G.L. c. 246, § 13.
3. The defendants’ remaining arguments challenge the trial court’s allegedly improper and inconsistent treatment of defendants’ requests for rulings of law numbers 22,23,24 and 28 which pertain to the acceleration of the maturity of the promissory note principal balance.
Any issue of inconsistency per se is foreclosed on this appeal by the defendants’ failure to file in the trial court a motion to correct the alleged inconsistencies or a motion for a new trial. Cifizzari v. D’Annunzio, 1984 Mass. App. Div. 102, 104 and cases cited.
The court’s actual disposition of requests 22,23,24 and 28 was predicted on a determination that “the closing of the business allowed for acceleration of the note.” The defendants correctly contend that no provision of the parties’ written agreements supports the court’s conclusion that the restaurant’s closing alone permitted an acceleration of the maturity of the note. But such contention, however correct, is irrelevant to the outcome of this appeal. Any error attending the court’s subsidiary conclusions on this issue was harmless, for the court’s ultimate ruling as to the proper acceleration of the defendants’ note was required by the reported evidence. See, as to harmless error in general, Bridges v. Hart, 302 Mass. 239 (1939). Pursuant to the express terms of paragraph 10 of the parties’ Security Agreement, acceleration was triggered by the defendants’ admitted default resulting from their failure to make payments on the note. Both the court’s conclusion as to acceleration and its disposition of requests 22,23,24 and 28 were thus proper, and such propriety was not vitiated by any mistake in the reasons given for the disposition. London Clothes Ltd. v. Maryland Cas. Co., 318 Mass. 698, 702 (1945). “The substantial rights of [appellants] are not injuriously affected if the course taken reaches the inevitable result of the case.” S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 110 (1950). As judgment was properly entered for the plaintiffs for the total balance of the promissory note in question, the defendants could not have satisfied their burden of proving on this appeal that the errors charged generated an injustice requiring a reversal of the trial court’s ultimate judgment or an order for a new trial. See, as to burden, Bendett v. Bendett, 315 Mass. 59, 65 (1943).
The defendants’ remaining arguments indirectly seek appellate review of the trial court’s subsidiary findings on the purely factual issues of negligence and causation. The scope of appellate review is limited to questions of law. G.L. c. 231, § 108; Butler v. Cromartie, 339 Mass. 4, 6 (1959).
*104 Accordingly, judgment for the plaintiffs is affirmed. The denial of defendants’ motion to dissolve the plaintiffs’ attachment on trustee process is vacated and an order allowing said motion to dissolve is to enter. So ordered.